United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETE LIVINGSTON,<br><br>    Plaintiff,<br><br>    v.<br><br>ART.COM, INC., et al.,<br><br>    Defendants. | Case No.  13-cv-03748-JSC<br><br>**ORDER GRANTING DEFENDANTS ART.COM, INC. AND CULTURENIK PUBLISHING, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 46 |

Plaintiff Pete Livingston contends that Defendants Art.com, Inc. ("Art.com"), Culturenik Publishing, Inc. ("Culturenik"), and Classico San Francisco, Inc. ("Classico") infringed his copyright in a photograph of Marilyn Monroe.[1]  Plaintiff, Art.com, and Culturenik have all consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). Although Classico has not filed a notice of consent or declination, as a party who has not been served, its consent is not required for jurisdiction.  *See Hard Drive Prods., Inc. v. Does 1–188*, 809 F. Supp. 2d 1150, 1155 (N.D. Cal. 2011).  Now pending before the Court is Art.com and Culturenik's motion for partial summary judgment as to 1) availability of statutory damages and attorney's fees, and 2) conversion cause of action and claim for punitive damages.  After carefully considering the parties' submissions, and having had the benefit of oral argument on June 26, 2014, the Court GRANTS the motion for partial summary judgment.[2]

---

[1] Plaintiff also claims that Jack Allen and Dream City Photo Lab infringed his copyright; however, those two defendants have been severed from this action.  (*See* Dkt. No. 35.)

[2] At the hearing, Plaintiff stated that he did not oppose Defendants' motion as to his conversion cause of action and claim for punitive damages.  The Court accordingly GRANTS Defendants' unopposed motion for summary judgment on the conversion cause of action and claim for punitive damages.

**SUMMARY JUDGMENT EVIDENCE**

Plaintiff purports to own copyrights in photographs taken by his father, Carl Perutz.  One of these photographs is a black-and-white photograph of Marilyn Monroe wearing a large hat with a flower ("the Photograph").  Plaintiff registered the photograph with the United States Copyright Office and was issued a Certificate of Registration on August 3, 2004.

In November 1996, Classico entered into an agreement with Jack Allen whereby Allen purported to grant Classico a license to produce and sell certain products using the images contained in a collection of photographs of Marilyn Monroe, titled *Marilyn by Moonlight*, which included the Photograph.  Plaintiff contends that a book by Allen published in 1996 titled *Marilyn by Moonlight* does not contain the Photograph.  The parties dispute whether the collection of photographs obtained by Classico from Allen in 1996 were the same photographs contained in the 1996 book by the same name.  From 1996 until 2009, when Classico dissolved as a corporate entity, Classico paid royalties to Allen for Classico's reproduction and sale of the Photograph.

In April 2004, Classico first sold 12 copies of the Photograph to AllPosters.com for resale to AllPosters.com's customers.  AllPosters.com sold its first copy of the Photograph to an AllPosters.com customer on May 12, 2004, and continued to make several sales each month.  In September 2006, AllPosters.com merged with Art.com, leaving Art.com as the surviving corporation.  All assets, liabilities, and obligations of AllPosters.com became assets, liabilities, and obligations of Art.com.

In November 2007, Plaintiff discovered that Art.com was selling the Photograph.  He contacted Art.com and demanded that it stop all infringing activities of his Photograph.  Art.com informed Plaintiff that the Photograph was obtained through its vendor, Classico, who had obtained it from Allen.  Art.com also told Plaintiff that it would cease sales of the Photograph and that it would immediately remove the Photograph images from its website.  Plaintiff then contacted Classico and Allen and demanded that they cease their infringing activities.  Allen apologized, withdrew the photograph from Classico, and offered to make restitution payments to Plaintiff.

From these interactions, Plaintiff believed that the parties had stopped their allegedly

United States District Court
Northern District of California

2

1   infringing use of the Photograph.  Sales records, however, show that Art.com continued to sell the

2   Photograph after November 2007.  Classico also continued the complained-of activity after

3   November 2007 and until it ceased to exist in 2009.

4        Approximately five years after Plaintiff's first discovery of the infringement, Plaintiff

5   discovered that Culturenik was actively selling reproductions of the Photograph for postcards,

6   magnets, posters, and prints.  Earlier, in February 2009, Culturenik purchased certain assets of

7   Classico, including Classico's complete inventory of products as well as Classico's trademarks,

8   copyrights, and all rights under existing licenses and other agreements.  Following this purchase,

9   Culturenik continued the business of Classico in selling reproductions of the Photograph to

10  Art.com and paying royalties to Allen.

11                                    **LEGAL STANDARD**

12       Summary judgment is appropriate "if the pleadings, depositions, answers to

13  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

14  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

15  of law."  Fed. R. Civ. P. 56(c).  "A moving party without the ultimate burden of persuasion at

16  trial—usually, but not always, a defendant—has both the initial burden of production and the

17  ultimate burden of persuasion on a motion for summary judgment."  *Nissan Fire & Marine Ins.*

18  *Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "[T]he moving party must

19  either produce evidence negating an essential element of the nonmoving party's claim or defense

20  or show that the nonmoving party does not have enough evidence of an essential element to carry

21  its ultimate burden of persuasion at trial . . . and persuade the court that there is no genuine issue

22  of material fact."  *Id.*

23       If the "moving party carries its burden of production, the nonmoving party must produce

24  evidence to support its claim or defense."  *Id.* at 1103.  If the nonmoving party fails to do so, "the

25  moving party wins the motion for summary judgment."  *Id.*  "But if the nonmoving party

26  produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats

27  the motion."  *Id.*  In deciding whether there exist genuine issues of material fact, the court draws

28  all reasonable factual inferences in favor of the non-movant.  *Anderson v. Liberty Lobby Inc.*,

United States District Court
Northern District of California

3

1    477 U.S. 242, 255 (1986).

2                              **DISCUSSION**

3         Under 17 U.S.C. § 504(a) and (c), a copyright owner may elect to recover statutory

4    damages instead of actual damages and any additional profits.  The Copyright Act, however,

5    requires that copyright registration is a prerequisite to recovering certain remedies for

6    infringement.  Specifically, 17 U.S.C. § 412(2) states that statutory damages and attorney's fees

7    are not available for "any infringement of copyright commenced after first publication of the work

8    and before the effective date of its registration, unless such registration is made within three

9    months after the first publication of the work."  Section 412 "is designed to implement two

10   fundamental purposes.  First, by denying an award of statutory damages and attorney's fees where

11   infringement takes place before registration, Congress sought to provide copyright owners with an

12   incentive to register their copyrights promptly.  Second, § 412 encourages potential infringers to

13   check the Copyright Office's database."  *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696,

14   700 (9th Cir. 2008) (citations omitted).  In keeping with Congress' intent to promote the early

15   registration of copyrights, the Ninth Circuit has held that "*the first act of infringement* in a series

16   of ongoing infringements of the same kind marks the commencement of one continuing

17   infringement under § 412."  *Id.* at 701.

18        The central question for disposition of this motion is whether Art.com's and Culturenik's

19   infringing activities[3] after registration are connected for purposes of Section 412 with "a series of

20   ongoing infringements of the same kind" that commenced prior to Plaintiff's registration.  *Id.* at

21   700.  The Court concludes that such a connection exists as a matter of law.

22        **A.    There is No Dispute as to Pre-Registration Infringement**

23        As an initial matter, the Court concludes that there is no dispute of material fact as to

24   whether Classico's, AllPosters.com's, and Allen's infringements began prior to registration.  The

25   record shows that Classico—Allen's licensee—first sold copies of the Photograph to

26   AllPosters.com, Art.com's predecessor-in-interest, in April 2004, which was approximately four

27

28   ─────────────────────
     [3] For purposes of this motion, the Court assumes that Defendants infringed Plaintiff's copyright.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    months before Plaintiff registered the Photograph.  The record further shows that AllPosters.com

2    first sold copies of the Photograph to retail customers in May 2004.

3        Although Plaintiff argues that these pre-registration acts never occurred, Plaintiff has not

4    produced any evidence that creates a genuine dispute of fact.  Plaintiff first asserts that Classico's

5    sale to AllPosters.com could not have occurred in April 2004 because those parties did not enter

6    into a supplier's agreement until 2006.  Plaintiff argues that the parties' relationship could not

7    have existed in 2004 because "it would mean that a dominant force in the art world recklessly

8    entered into a vendor relationship without a vendor agreement."  (Dkt. No. 53 at 13.)  Despite

9    Plaintiff's baseless speculation, the undisputed evidence shows that Classico sold the Photograph

10   to AllPosters.com in April 2004.  (*See* Dkt. No. 46-7, April 2004 Sales Invoice.)  No reasonable

11   jury could find that the April 2004 sales record was false simply because there was no formal

12   supplier's agreement between the parties at the time of sale.

13       Plaintiff also argues that Classico's and AllPosters.com's pre-registration sales must be

14   fabricated because Defendants have falsely recounted how Classico licensed the Photograph from

15   Allen.  Specifically, Plaintiff challenges Defendants' evidence that, in November 1996, Classico

16   entered into an agreement with Allen whereby Allen purported to grant Classico a license to

17   produce and sell certain products using the images contained in a collection of photographs of

18   Marilyn Monroe, titled *Marilyn by Moonlight*, which included the Photograph.  Plaintiff asserts

19   that the *Marilyn by Moonlight* collection licensed to Classico could not have included the

20   Photograph because a book by Allen published in 1996 titled *Marilyn by Moonlight* does not

21   contain the Photograph.  Plaintiff insists—though produces no evidence—that the book and the

22   collection, if not the same thing, both contain the exact same photographs.  However, as

23   Defendants contend, *how* Classico obtained the Photograph from Allen is not material to the

24   disposition of this motion.  That is, such a dispute does not change the undisputed fact that in

25   April 2004 Classico sold the Photograph to AllPosters.com, which then sold the Photograph to

26   retail customers the next month.  Further, Plaintiff's attempt to use this immaterial dispute to

27   bootstrap an actually material dispute—*i.e.*, pre-registration sales—is unpersuasive.  No

28   reasonable jury could find that the April and May 2004 sales records were falsified based simply

5

United States District Court
Northern District of California

on a finding that Allen's *Marilyn by Moonlight* collection licensed to Classico did not include the Photograph, given that it is undisputed that Allen at some point licensed the Photograph to Classico and sales commenced.  In other words, because Plaintiff fails to produce any countervailing evidence of when Allen licensed the Photograph, it would be arbitrary, and thus unreasonable, for a jury to find that the licensing and sales commenced only after registration.

Finally, no reasonable juror could find that AllPosters.com/Art.com's sales records "are likely to be either fabricated or correspond to another image."  (Dkt. No. 53 at 12.)  Plaintiff's contention is based on the supposed discrepancy between the item numbers for a version of the Photograph listed on Art.com's website in 2007 and the item numbers listed in the sales records.  However, as explained in the Supplemental Declaration of Richard Raffino, the supposed discrepancy is merely the result of different websites using different product numbers and selling different products that use the Photograph.  For instance, Art.com and AllPosters.com sold the same product, but used a different product number; the number used in the sales record is the product number used by AllPosters.com, not Art.com.  Thus, there is no genuine dispute that AllPosters.com first sold the Photograph online in May 2004.

## B.       Continuous Infringing Conduct

While Allen's, Classico's, and AllPosters.com's first acts of infringement occurred prior to registration, Plaintiff seeks statutory damages from Art.com and Culturenik—entities that did not begin infringing until after registration.  The central question, then, is whether Art.com's and Culturenik's post-registration conduct must be connected for purposes of Section 412 with Allen's, Classico's, or Allposters.com's pre-registration infringements; in other words, are the infringements "a series of ongoing infringements of the same kind" that commenced prior to Plaintiff's registration?  *Derek Andrew*, 528 F.3d at 700.  This question has two parts: 1) whether, and under what circumstances, Section 412 applies to the infringing conduct of multiple defendants or entities (as opposed to the continuous infringing conduct of a single defendant or entity), and 2) whether Section 412 applies to the conduct of Defendants in this case.

### 1.       Section 412's Application to Multiple Entities

Regarding the first question, which the Ninth Circuit has not addressed, the Court

United States District Court
Northern District of California

1  concludes that a series of ongoing infringements under Section 412 may include infringements

2  from multiple entities under some circumstances.  In *Bouchat v. Bon-Ton Dept. Stores, Inc.*, 506

3  F.3d 315, 331 (4th Cir. 2007), the Fourth Circuit held that "a copyright owner may not obtain

4  statutory damages from a licensee liable jointly and severally with a licensor when the licensor's

5  first infringing act occurred before registration and was part of the same line of related

6  infringements that included the licensee's offending act."  A jury in an earlier case had found in

7  favor of Bouchat on the issue of infringement and against National Football League Properties,

8  Inc. ("NFLP") for NFLP's use of Bouchat's "Flying B" logo.  Bouchat, however, was precluded

9  from seeking statutory damages from NFLP because its infringement commenced before

10  registration.[4]  In Bouchat's second suit, he sought statutory damages from NFLP's 350 licensees

11  who had reproduced and sold the logo after registration.  In holding that the defendants-licensees'

12  offending acts were "part of the same line of related infringement" that included the licensor's

13  initial offending act, the *Bouchat* court harmonized Section 412 with 17 U.S.C. § 504(c)(1), which

14  allows statutory damages "for all infringements involved in the action . . . for which any one

15  infringer is liable individually, or for which any two or more infringers are liable jointly and

16  severally."   The court concluded that "[b]ecause [Section 504] does not distinguish between 'one

17  infringer . . . liable individually' and 'two or more infringers . . . liable jointly and severally,' we

18  must treat these two categories of infringers identically when assessing their statutory damages

19  liability."  *Bouchat*, 506 F.3d at 330 (citation omitted).   Thus, since NFLP was jointly and

20  severally liable for the licensees' infringement, *id.* ("NFLP gave each licensee permission to copy,

21  so NFLP was also responsible for the licensee's acts of copying, making NFLP jointly and

22  severally liable for the infringing acts of each licensee."), "we must trace the licensee's post-

23  registration infringing conduct back to NFLP's pre-registration conduct and thereby deny statutory

24  damages to Bouchat," *id.* at 331.  The court further stated that neither NFLP's non-party status nor

25  the licensees' non-involvement in the initial infringement "change[d] the analysis."  *Id.*  The court

26  reasoned that "[f]ocusing on NFLP's conduct here is entirely logical.  Once NFLP designed and

27

28  _____

[4] A second jury considering actual damages awarded none.

1    licensed the Flying B logo that infringed Bouchat's copyright, the liability of all of NFLP's

2    licensees became a foregone conclusion."  *Id.*

3         Plaintiff does not challenge the *Bouchat* court's statutory analysis, which has been adopted

4    by at least two other courts.[5]  This Court finds *Bouchat*'s analysis persuasive and holds, consistent

5    with *Bouchat*, that a copyright owner may not obtain statutory damages from a defendant liable

6    jointly and severally with an entity when that entity's first infringing act occurred before

7    registration and was part of the same line of related infringements that included the defendant's

8    offending act.

9         Plaintiff's argument to the contrary relies on a single case—*Mason v. Montgomery Data*,

10   *Inc.*, 967 F.2d 135, 144 (5th Cir. 1992)—which stands for the unremarkable proposition that "a

11   plaintiff may not recover an award of statutory damages and attorney's fees for infringements that

12   commenced after registration if the same defendant commenced an infringement of the same work

13   prior to registration."  Although Plaintiff seizes on the phrase "same defendant," it does not have

14   the meaning Plaintiff ascribes to it.  That is, the *Mason* court did not hold that the *only* time a

15   plaintiff is precluded from an award of statutory damages and attorney's fees is when the same

16   defendant commences infringement prior to registration.  That question was not before the *Mason*

17   court as the infringing activity of only a single entity was at issue.  *Mason* is therefore inapplicable

18   to this case.[6]

19              **2.    Section 412's Application to Art.com's and Culturenik's**
                       **Post-Registration Conduct**

20

21        Turning to the second part of the question posed above—whether Section 412 applies to

22   the conduct of Defendants in this case—the Court answers in the affirmative as to both Art.com

23   and Culturenik.

24

25   [5] *Morgan v. Hawthorne Homes, Inc.*, 2011 WL 2181385 (W.D. Pa. June 2, 2011); *Leonard v.
     Stemtech Health Scis., Inc.*, 2011 WL 6046701 (D. Del. Dec. 5, 2011).

26   [6] At the hearing, Plaintiff also argued that *Bouchat* and the cases following it are distinguishable
     because in those cases the plaintiff knew of the infringement and then registered, whereas here
27   Plaintiff was unaware of the infringement when he registered.  Plaintiff's proposed distinction is
     unpersuasive as nothing in those cases, or Section 412, hinges a "commencement" of infringement
28   on a copyright holder's knowledge of the initial infringement.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The connection between AllPosters.com's and Art.com's infringing conduct is

2    straightforward.  As noted above, following its purchase of Art.com, AllPosters.com merged with

3    Art.com in 2006, with Art.com left as the surviving corporation.  It is undisputed that Art.com

4    continued AllPosters.com's sales of the Photograph after the merger.  Because Art.com and

5    AllPosters.com merged, they are one and the same; thus, Art.com is "one infringer . . . liable

6    individually" for its predecessor's (AllPosters.com) infringement.[7]  17 U.S.C. § 504(c)(1).

7    Because the alleged infringing conduct of AllPosters.com (now Art.com) commenced prior to

8    registration, Section 412 bars Plaintiff from collecting statutory damages and attorney's fees from

9    Art.com.  *See Derek Andrew*, 528 F.3d at 700.

10    Although the connection between an entity's pre-registration infringement and

11    Culturenik's post-registration infringement is not as direct,[8] *Bouchat*'s holding warrants a similar

12    conclusion.  As an initial matter, there are two possible connections between Culturenik's conduct

13    and another entity's pre-registration infringement; namely, the connection between Culturenik and

14    Classico only, and the connection between Culturenik and Allen.  Although Defendants' briefs

15    focus solely on the former connection, Defendants asserted at the hearing that the latter connection

16    compels application of Section 412 as well.

17    For purposes of Section 412, the licensor-licensee relationship between Allen and

18    Culturenik is indistinguishable from the licensor-licensee relationship between NFLP and the

19    *Bouchat* defendants.  It is undisputed that Allen gave Culturenik permission to copy, making Allen

20    responsible for its licensee's acts of copying; that is, making Allen jointly and severally liable for

21    Culturenik's infringing acts.  *See Bouchat*, 315 F.3d 330-31 ("NFLP gave each licensee

22    permission to copy, so NFLP was also responsible for the licensee's acts of copying, making

23    NFLP jointly and severally liable for the infringing acts of each licensee.").  Because of Allen and

24    Culturenik's joint and several liability through the licensor-licensee relationship, the Court "must

25

26    [7] There is no joint and several liability between Art.com and Allposters.com because they are not separate and distinct entities.

27    [8] As noted above, Culturenik purchased certain assets of Classico's in February 2009, including its rights in the Photograph.  Classico did not merge into Culturenik; rather, it simply stopped doing business and dissolved as a corporate entity.  Thus, unlike Art.com, Culturenik is not one infringer liable individually for its and Classico's infringements.

28

1    trace the licensee's post-registration infringing conduct back to [Allen]'s pre-registration conduct

2    and thereby deny statutory damages [and attorney's fees] to [Plaintiff]." *Id.* at 331.  And as in

3    *Bouchat*, neither Allen's status as a non-party to this action nor Culturenik's non-involvement in

4    the pre-registration infringement changes the analysis.  When Allen licensed the Photograph that

5    infringed Plaintiff's copyright, the liability of Allen's licensees "became a foregone conclusion."

6    *Id.*

7            Further, nothing in *Bouchat* suggests that the analysis changes because Culturenik

8    purchased its license from Classico.  *Bouchat* did not draw distinctions between NFLP's 350

9    licensees, whose only common characteristic beyond the licensing arrangement with NFLP was

10   their post-registration infringement.  If an NFLP licensee had acquired its licensee from a sale

11   from a previous NFLP licensee, *Bouchat*'s holding would still apply because NFLP is still jointly

12   and severally liable for the new licensee's infringing acts.  The same is true here.  Allen licensed

13   the Photograph to Classico pre-registration, continued such licensing throughout the relevant time

14   period, and merely substituted Culturenik in for Classico as the licensee.  Thus, Allen's pre-

15   registration conduct can be connected for purposes of Section 412 with Culturenik's post-

16   registration infringement thereby denying Plaintiff statutory damages and attorney's fees.

17           The Court, however, is not persuaded that Culturenik's post-registration conduct can be

18   connected to Classico's pre-registration conduct for purposes of Section 412.  Defendants'

19   argument endorsing such a connection rests on a broad reading of *Bouchat*'s holding.  Defendants

20   assert that "[s]o long as all such defendants were 'participant[s]' in the same 'line of related

21   copyright violations,' the series of alleged infringements 'commenced' within the meaning of

22   Section 412 on 'the earliest date of infringement by any participant' in that series."  (Dkt. No. 46

23   at 10 (quoting *Bouchat*, 506 F.3d at 331).)  However, when quoted in its entirety, the holding in

24   *Bouchat* plainly includes a requirement that the multiple infringing actors be liable jointly and

25   severally.  506 F.3d at 331 ("Thus, we hold that a copyright owner may not obtain statutory

26   damages from a licensee *liable jointly and severally* with a licensor when the licensor's first

27   infringing act occurred before registration and was part of the same line of related infringements

28   that included the licensee's offending act.") (emphasis added).  After all, the existence of joint and

several liability in Section 504(c)(1) formed the basis for extending that category of infringers into Section 412.

Defendants, however, make no explicit argument that Classico is jointly and severally liable for Culturenik's infringement.  At most, Defendants identify language in the Complaint alleging that "Defendants are agents of one another, and have acted in concerted activity with one another" in committing the alleged infringements (Dkt No. 1 ¶ 29), and conclude, "[t]hus, for purposes of liability, Plaintiff has treated Defendants as 'participant[s] in a line of related copyright violations.'"  (Dkt. No. 46 at 10 (quoting *Bouchat*, 506 F.3d at 331).)  While Plaintiff's allegations certainly support the conclusion that Defendants "have acted in concerted activity with one another," the Court is unaware of any general rule that holds that Classico's sale of the license in this case makes it liable for Culturenik's later infringement using the license.  And while Plaintiff's complaint alleges a claim of contributory infringement against all Defendants, the claim is boilerplate and does not tease out Classico's, or any other defendant's, contributory liability.

Looking beyond *Bouchat*, Defendants argue that *Bouchat*'s "principle" holds true "even where the infringing parties have no formal licensor-licensee relationship."  (*Id.*)  Defendants cite three cases in support: *Morgan v. Hawthorne Homes, Inc.*, 2011 WL 2181385 (W.D. Pa. June 2, 2011); *Leonard v. Stemtech Health Scis., Inc.*, 2011 WL 6046701 (D. Del. Dec. 5, 2011); and *Love v. City of New York*, 1989 WL 140578 (S.D.N.Y. Nov. 17, 1989).  While these cases do support the proposition that *Bouchat*'s holding is not limited to the licensor-licensee context, they do not persuade the Court that pre-registration infringement by one entity can connect to the post-registration infringement of another entity absent joint and several liability (or individual liability) among the entities.

In *Morgan*, the plaintiff alleged that the infringement of his architectural drawings began in 2001, prior to registration, when defendant Hanna Holdings acquired the drawings.  2011 WL 2181385 at *1.  Morgan also contended that Hanna Holdings transferred the drawings to defendant Hawthorne Homes "for the purpose of re-drafting the plans into a computer format and then using the plans to create new homes."  *Morgan v. Hanna Holdings, Inc.*, 635 F. Supp. 2d 404, 407 (W.D. Pa. 2009).  "With these plans, the various subsidiaries of Hanna Holdings . . . continued the

United States District Court
Northern District of California

infringement by using Morgan's plans to construct, market, and sell houses." *Morgan*, 2011 WL 2181385 at *1. In seeking statutory damages and attorney's fees, Morgan asserted that later post-registration infringement of those drawings by Hanna Holdings' subsidiaries, for which Morgan sought to hold Hanna Holdings and Hawthorne Homes liable on contributory and vicarious liability claims, should not be considered part of a continuing infringement that commenced in 2001. The *Morgan* court rejected that argument:

> Morgan asserts that Defendants violated his copyrights "by making copies of the plans" and "by making copies of the plans, by making derivative works, and by building houses according to his plans." Insofar as Morgan alleges that Hawthorne Homes began infringing on his copyrights in 2001 by repeatedly copying his drawings, and that all infringement by the subsidiaries of Hanna Holdings arose out of this initial infringement, any post-registration conduct is therefore traceable to pre-registration conduct. As such, the pre-registration infringement and the post-registration infringement (between which Morgan does not distinguish in his Amended Complaint or Second Amended Complaint) constitute one continuing infringement for purposes of § 412(2). There is no legally significant difference between the pre-registration conduct and the post-registration conduct (if at all) that would suggest that the alleged infringement was anything but an ongoing series of infringements that commenced in 2001.

*Id.* at *3 (citation omitted). While it is true that the relationship between Hanna Holdings and its subsidiaries, and Hawthorne Homes and Hanna Holdings' subsidiaries, was not licensor-licensee, as with *Bouchat*, the defendants' liability for the post-registration infringement was nevertheless joint and several: the defendants were liable for the subsidiary home builders' post-registration use of the plans.

In *Leonard*, the defendant was Stemtech, a company that manufactured nutrition supplements and sold them through a network of distributors. Stemtech's business included providing marketing materials and internet sites for its distributors. Leonard filed suit against Stemtech after he discovered his copyrighted images on the distributors' websites. Leonard's operative complaint included claims for direct, contributory, and vicarious liability. As the plaintiff in *Morgan*, Leonard sought statutory damages and argued that

> [Stemtech] was first liable for contributory and vicarious infringement of Images 3 and 4 due to the October 2007 pre-registration posting of those Images on www.yourstems.com, the

12

United States District Court
Northern District of California

> website of an alleged distributor.  However, Plaintiff argues that if another of Defendant's third-party distributors committed an act of post-registration infringement of those same images, that would be a "new" and distinct infringement, which should not be considered a part of [Stemtech's] continuing infringement.

*Leonard*, 2011 WL 6046701 at *15.  The court rejected this argument, concluding that Leonard "cannot have it both ways." *Id.*  That is, Leonard could not center his claims of infringement on Stemtech's pre-registration conduct, and then turn around and assert that Stemtech's pre-registration conduct was irrelevant to the statutory damages inquiry.  Again, as in *Morgan* and *Bouchat*, the defendant's liability was joint and several.  Also as in *Bouchat*, the post-registration infringement of Stemtech's distributors was a "foregone conclusion" once Stemtech copied the images and provided the infringing marketing materials to its distributors.  506 F.3d at 331.

Finally, the court in *Love* held that defendant City of New York's post-registration infringement regarding distribution of a manuscript was part of a continuing infringement, which commenced prior to registration when another defendant published the same manuscript, because "it was the same infringement—distribution of [the manuscript]—that commenced before registration, and is no different conceptually from sale of an infringing book by one book store before registration and sale of the same book by another after registration."  1989 WL 140578, at *2.  While *Love* provides the broadest reading of Section 412, with no indication that liability was joint and several, the court's analysis is conclusory and provides no statutory interpretation as in *Bouchat*.  The Court therefore declines to follow *Love*.

At base, Defendants' assertion that a series of infringements by multiple participants commences under Section 412 when one participant "in the same line of related copyright violations" infringes, is overbroad and taken out of context from the few cases that have examined the issue.  The Court concludes that determining whether one participant's infringement is in the same line of related copyright violations as other participants' infringements requires an examination of the participants' liability amongst each other.  *See Bouchat*, 506 F.3d at 330-31.  Because Defendants have failed to conduct such an examination regarding Classico and Culturenik's relationship, and since the nature of their liabilities is not readily apparent to the Court, Defendants' attempt to connect Culturenik's post-registration conduct with Classico's pre-

registration conduct is unpersuasive for purposes of summary judgment.

### C.   Plaintiff's Remaining Arguments

Plaintiff asserts that, even if Defendants' infringement was continuous, statutory damages and attorney's fees under Section 412 should nevertheless be awarded because Art.com and Allen told Plaintiff in 2007 that they would cease infringement.  Plaintiff argues that such a ruling would be consistent with the policies underlying Section 412—encouraging registration of works and encouraging the checking of the registrations by potential infringers.  Plaintiff cites no authority in support of his policy argument regarding notice.  And as Defendants assert, an infringer who commences infringement before registration is still protected by Section 412 after registration even though that registration puts him on constructive notice of the copyright.  *See Teevee Toons, Inc. v. Overture Records*, 501 F. Supp. 2d 964, 967 (E.D. Mich. 2007) (holding that under Section 412 "[w]hether the alleged infringer has notice, actual or constructive, is irrelevant").  Further, Plaintiff's lament that the Court's holding allows infringement in perpetuity is wrong.  A copyright holder may still receive actual damages and may also be entitled to injunctive relief. *See* 17 U.S.C. § 504(a)(1) (providing actual damages); *see also* 17 U.S.C. § 502 (providing injunctive relief).

Finally, Plaintiff asserts that it just recently discovered "new" infringements that exist on Defendants' websites.  Plaintiff argues that while Defendants no longer offer the image for sale, it is still displayed on the websites and therefore infringing.  Nothing, however, supports Plaintiff's bare speculation that the display of these images, which is not alleged in the Complaint, and not in the summary judgment record, is new.

### CONCLUSION

For the reasons stated above, Defendants' motion for partial summary judgment is GRANTED.  A further Case Management Conference is set for **September 4, 2014**.

**IT IS SO ORDERED.**

Dated: July 11, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

14

United States District Court
Northern District of California