UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PETE LIVINGSTON,

        Plaintiff,

    v.

ART.COM, INC., et al.,

        Defendants.

Case No.  13-cv-03748-JSC

**ORDER DENYING MOTION TO SET ASIDE DEFAULT; REASSIGNING CASE TO DISTRICT JUDGE; REPORT AND RECOMMENDATION GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

Re: Dkt. No. 87

United States District Court
Northern District of California

      Plaintiff contends that Defendants Jack Allen ("Allen") and Dream City Photo Lab ("Dream City," and together, "Allen" or "Defendants") infringed his copyright in a photograph of Marilyn Monroe (the "Photograph").[1]  The Clerk of Court entered default against Allen and Dream City on November 14, 2013, after they failed to appear or otherwise defend themselves in this matter since its commencement in August of 2013.  (Dkt. No. 20.)  Plaintiff now moves for default judgment including an award of statutory damages, attorneys' fees and costs, and an injunction barring any future infringements of Plaintiff's right to the Photograph.  (Dkt. No. 87.)  Also presently before the Court is Allen's motion to set aside the Clerk's entry of default.  (Dkt. No. 100.)

      The Court finds the motions suitable for disposition without oral argument pursuant to Local Rule 7-1(b).  Having considered the parties' written arguments, the Court DENIES Allen's motion to set aside default.  As for Plaintiff's motion for default judgment, because the Court has

---

[1] As will be explained further below, Plaintiff also brought suit against Art.com, Inc. ("Art.com"), Culturenik Publishing, Inc. ("Culturenik"), and Classico San Francisco, Inc. ("Classico," and together, the "appearing Defendants"); however, the Court granted these defendants' motion for partial summary judgment.  (*See* Dkt. No. 62.)

not obtained consent from Allen or Dream City pursuant to 28 U.S.C. § 636, this matter must be reassigned to a District Judge.  The Court recommends that Plaintiff's motion for default judgment be GRANTED as set forth below.

## BACKGROUND

The factual background of this matter has already been explained in detail in the Court's opinion granting partial summary judgment to Defendants Art.com, Culturenik, and Classico.  *See Livingston v. Art.com*, No. 13-cv-3748, 2014 WL 3404722, at *1 (N.D. Cal. July 11, 2014).  (*See also* Dkt. No. 67.)  Nevertheless, the Court highlights the following complaint allegations relevant to the instant motions.

Plaintiff owns copyrights in photographs taken by his father, Carl Perutz, including a photograph of Marilyn Monroe.  (Dkt. No. 1-1 ¶¶ 12-14.)  One of these photographs is a black and white photograph of Marilyn Monroe wearing a large hat with a flower (the "Photograph").  (*Id.* Ex. B.)  Plaintiff registered the Photograph with the United States Copyright Office and was issued a Certificate of Registration on August 3, 2004.  In July of 2008, he learned that Art.com was unlawfully selling copies of the Photograph, and he contacted Art.com to request that they cease any infringing activity.  Art.com explained that its vendor, Classico, was authorized to sell the Photograph based on royalties paid to the Photograph's purported owner, Allen, through his company Dream City.  Plaintiff contacted Allen to demand that he cease infringing activity, at which point Allen apologized to Plaintiff and withdrew the Photograph from Classico's collection.  (*Id.* ¶¶ 15-18.)  Nevertheless, in October of 2012 Plaintiff discovered that Culturenik, Classico, and Art.com were all "actively engaged in the sale of" infringing products.  (*Id.* ¶¶ 20-21.)

Plaintiff subsequently filed a three-count complaint alleging that Defendants' conduct constituted direct copyright infringement, contributory copyright infringement, and conversion.  Defendants Art.com, Culturenik, and Classico entered appearances and, along with Plaintiff, filed consent to proceed before the undersigned magistrate judge.  (Dkt. Nos. 5, 14.)  Defendants Allen and Dream City, however, failed to appear in the action altogether: they neither filed an answer or other responsive pleading, nor consented to proceed before the undersigned magistrate judge.  The Clerk of Court entered default against Allen and Dream City on November 14, 2013.  (Dkt. No.

United States District Court
Northern District of California

2

20.)

In late November of 2013, upon the stipulation of the parties, the Court severed Plaintiff's claims against Allen and Dream City from the claims against the appearing defendants.  (Dkt. No. 35.)  The Court then granted the appearing defendants' motion for partial summary judgment, concluding, among other things, that Plaintiff could not recover statutory damages or attorneys' fees under the Copyright Act, as will be explained in more detail below.  *Livingston*, 2014 WL 3404722, at *1.  Plaintiff then moved for default judgment against Allen and Dream City on November 19, 2014, similarly seeking statutory damages and attorneys' fees under the Copyright Act, as well as injunctive relief enjoining Allen and Dream City from continuing any infringing use of the Photograph.  (Dkt. No. 87.)  Following its review of the motion, the Court ordered supplemental briefing.  (Dkt. Nos. 92.)

Appearing in this litigation for the first time, on January 2, 2015, Allen (on his and Dream City's behalf) filed an opposition to Plaintiff's motion for default judgment, in which he sought to set aside default.  (Dkt. No. 95.)  The Court then set a briefing schedule for a formal motion to set aside the Clerk's entry of default, which is now before the Court.  (Dkt. No. 100.)  Dream City still has not appeared in this matter and has not expressly joined Allen's motion to set aside default.[2]

## DISCUSSION

## I.      Setting Aside Default

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.  Fed. R. Civ. P. 55(a).  A district court may set aside the entry of default upon a

---

[2] In its order setting a briefing schedule on the motion to set aside default, the Court warned Allen that Dream City could not appear pro se as a corporation, would not automatically join Allen's motion merely because Allen owns the business and, if it wished to join the motion, must retain counsel.  (Dkt. No. 97 at 3.)  In his motion, Allen notes that Dream City's corporate status has been suspended, and it is now a sole proprietorship.  (Dkt. No. 100 n.2.)  A sole proprietorship has no legal existence separate from its owner.  *See Bd. of Trs. of Laborers Health & Welfare Trust Fund for No. Cal. v. Perez*, No. C-10-2002 JSW (JCS), 2011 WL 6151506, at *4 (N.D. Cal. Nov. 7, 2011).  In any event, or perhaps as a result, Dream City has not separately moved to set aside default in this case.

United States District Court
Northern District of California

showing of 'good cause.'  Fed. R. Civ. P. 55(c).  To determine good cause, a court must consider three factors:  (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether setting aside the default would prejudice the other party.  *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).  The moving party bears the burden of showing that these factors weigh in favor of granting the motion to set aside default.  *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004).  The standard is disjunctive, "such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default."  *Id.*  Thus, even if one of the factors goes against the defendant, the Court may still exercise its discretion and grant the motion.  *Brandt v. Am. Bankers Ins. Co.*, 653 F.3d 1108, 1112 (9th Cir. 2011) ("A district court may exercise its discretion to deny relief to a defaulting defendant based solely upon a finding of defendant's culpability, but need not.").  Put another way, the defendant must show that "any of these factors favor[s] setting aside the default," and the default may stand if any of the three factors weighs against Defendant.  *Franchise Holding II*, 375 F.3d at 926.

When considering whether to set aside default, a court should bear in mind that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits."  *Mesle*, 615 F.3d at 1091 (citation omitted); *see also Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).  In addition, any doubt about the cause of default should be resolved in favor of the motion to set aside the default so that the case may be decided on its merits.  *O'Connor v. State of Nevada*, 27 F.3d 357, 364 (9th Cir. 1994).

As a threshold matter, the Court notes that it may consider Allen's Rule 55 motion to set aside default even though it was not timely filed especially where, as here, Plaintiff has responded to the motion.  *See, e.g.*, *Wahoo Int'l, Inc. v. Phix Doctor, Inc.*, No. 13cv1395-GPC(BLM), 2014 WL 6810663, at *2 n.1 (S.D. Cal. Dec. 2, 2014) (considering the defendant's opposition to the plaintiff's motion for default judgment that was filed 10 days late where plaintiff filed a reply to that opposition).  Accordingly, the Court will consider each factor.

4

A.     Culpable Conduct

"'[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer.'" *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) (emphasis in original), *overruled in part on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001).  "[I]n this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather . . . the movant must have acted with *bad faith*, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Mesle*, 615 F.3d at 1092 (citation omitted); *see also TCI Grp.*, 244 F.3d at 699 (noting that conduct is culpable when it demonstrates a "devious, deliberate, willful, or bad faith failure to respond").  In other words, "intentional" in the default context is something more than merely "the result of conscious choice" not to respond.  *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (emphasis added).

Here, Allen states that his failure to respond was the result of two things: misunderstanding and inability.   First, Allen represents that he did not respond to the complaint because, due to previous dealings with Plaintiff, he believed that Plaintiff had granted him permission to use the Photograph.  (Dkt. No. 100-1 ¶ 2 & Ex A.)  Specifically, after receiving the complaint and summons, Allen spoke with Plaintiff's counsel, who gave Allen the impression that Plaintiff was really bringing the action against Art.com, not him.  (*Id.* ¶ 7.)   At the same time, Allen urges that he always intended to answer the complaint but failed to do so because he became preoccupied by other things: serving as executor to a friend's estate; becoming severely depressed due to his mother's deteriorating health; and trying to prevent his business, Dream City, from going bankrupt.  (*Id.* ¶¶ 8-9.)  In short, Allen contends that he "simply did not have the resources or the mental health required to adequately challenge this lawsuit or the default judgment."  (Dkt. No. 100 at 4.)  To be sure, Allen's initial mistake about the goals of Plaintiff's lawsuit and his role as defendant could have been avoided by thoroughly reading the complaint or seeking his own legal assistance.  But neither that oversight nor Allen's failure to answer given the other overwhelming events in his life rise to the level of bad faith intentional failure to respond.  *Mesle*, 615 F.3d at

United States District Court
Northern District of California

United States District Court
Northern District of California

1092; *see, e.g.*, *Dao v. Liberty Life Assurance Co. of Boston*, No. 14-cv-04749-SI, 2015 WL 457814, at *3 (N.D. Cal. Feb. 3, 2015) (finding no bad faith intentional failure to respond where defendant failed to answer because he relied on an incorrect deadline provided by his agent for service of process).  Indeed, the Ninth Circuit has found it proper to set aside default where the defendant failed to respond due to "exigent personal circumstances, especially [one's] mental state[.]"  *TCI Grp.*, 244 F.3d at 699.

Plaintiff's argument to the contrary is unpersuasive.  Although Plaintiff insists that Allen's conduct is culpable "because he received actual notice of the lawsuit and failed to answer[,]" (Dkt. No. 101 at 2), the Ninth Circuit has clarified that this "standard's application [is] limited to legally sophisticated parties whose conduct can be presumed to be intentional."  *Yagman v. Galipo*, No. CV 12-7908-GW(SHx), 2013 WL 1287409, at *10 (C.D. Cal. Mar. 25, 2013) (citing *Mesle*, 615 F.3d at 1093).  Thus, Plaintiff's focus on Allen's receipt of the summons and complaint does not change the Court's analysis when, as here, Allen has set forth reasons explaining why he did not respond to the complaint in a timely manner.  *See also E&J Gallo Winery v. Cantine Rallo S.p.A.*, 430 F. Supp. 2d 1064, 1088 (E.D. Cal. 2005) (noting that the Ninth Circuit's approach to this factor is forgiving and it "accept[s] even 'weak' reasons if they reveal mere 'negligence and carelessness . . . not deviousness or willfulness" (citation omitted)).

B.  <u>Meritorious Defense</u>

Second, Allen has provided the Court with specific facts that would constitute a meritorious defense.  The "meritorious defense" requirement is "not extraordinarily heavy."  *TCI Grp.*, 244 F.3d at 700.  To that end, "[a]ll that is necessary to satisfy [the] requirement is to allege sufficient facts that, if true, would constitute a defense."  *Id.*  Whether those factual allegations are in fact true is determined by litigation on the merits, not by the Court on a motion to set aside default.  *Id.*  Here, Allen admits that he has a collection of photographs of Marilyn Monroe, but asserts that the Photograph is not among his collection so he has not infringed Plaintiff's copyright in the Photograph.  (Dkt. No. 100-1 ¶ 3.)  In support of his argument, Allen submits screenshots of a 2004 CD archive depicting the eleven Carl Perutz photographs he has, none of which—he asserts—is the Photograph.  (*Id.* ¶ 3 & Ex. B.)  These facts, if true, would constitute a meritorious

6

United States District Court
Northern District of California

1    defense to Plaintiff's copyright infringement claims.  Thus, this factor also weighs in favor of

2    setting aside default.

3              C.        Possibility of Prejudice

4              The third factor considers whether setting aside default would prejudice the plaintiff.  *See*

5    *Mesle*, 615 F.3d at 1091.  "To be prejudicial, the setting aside of a default must result in greater

6    harm than simply delaying resolution of the case, or forcing the plaintiff to litigate on the merits."

7    *Dao*, 2015 WL 457814, at *3 (citing *TCI Grp.*, 244 F.3d at 701).  The standard is whether setting

8    aside default will hinder the plaintiff's ability to pursue her claim by showing some tangible harm,

9    like loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or

10   collusion.  *TCI Grp.*, 244 F.3d at 701 (quoting *Falk*, 739 F.2d at 463).

11             Allen contends in a conclusory manner that setting aside the default will not prejudice

12   Plaintiff.  (*See* Dkt. No. 100 at 5.)  Allen also notes that allowing him to litigate the merits would

13   avoid inconsistent judgments that might result from a default judgment awarding statutory

14   damages to Plaintiff given the Court's determination that Allen's acts of infringement occurred

15   prior to Plaintiff having registered the Photograph, thus making such statutory damages

16   unavailable.  Plaintiff, for his part, contends that the prejudice here stems from requiring Plaintiff

17   to "re-litigate issues that were already decided."  (Dkt. No. 101 at 4.)  In particular, and in contrast

18   to Allen, Plaintiff argues that setting aside default and allowing Allen to litigate the merits of the

19   infringement claims will either be needlessly duplicative or result in inconsistent judgments.

20             The Court concludes that Plaintiff will be prejudiced substantially if Allen's default is set

21   aside.  Plaintiff has not been spared from litigating the merits of this dispute: Plaintiff fully

22   litigated the merits of the copyright infringement at issue with Defendants Art.com and

23   Culturenik, which addressed the very defense that Allen now raises for the first time over a year

24   after default was entered against him.  Having to relitigate the merits of the same dispute

25   constitutes prejudice especially where, as here, Plaintiff litigated the merits over a long period of

26   time.  *See, e.g.*, *Aspen Ins. U.K. Ltd. v. Emerald City Escrow LLC*, No. C09-820Z, 2010 WL

27   1849027, at *4 (W.D. Wash. May 6, 2010); *Stephenson v. El-Batrawi*, 524 F.3d 907, 915 (8th Cir.

28   2008) (finding that setting aside default would prejudice plaintiff where it would cause plaintiff to

re-litigate claims nearly three years after default was entered).  This is not a situation where a defendant sought to set aside default several months after it was entered and before the plaintiff had even moved for default judgment.  To the contrary, after default was entered against Allen, Plaintiff litigated this case on the merits and proceeded to summary judgment with certain defendants, then moved for default judgment, which involved a preliminary motion followed by two rounds of supplemental briefing at the Court's request.  The first peep Allen made in this matter came several weeks after the first round of supplemental briefing on the motion for default judgment, over a month after the initial motion for default judgment was filed, nearly six months after the Court entered partial summary judgment, and over a year after default was first entered against him.  Under these circumstances, requiring Plaintiff to re-litigate the very same issues he already addressed over the past 15 months is prejudicial.

Even if Plaintiff were put to the task of litigating these matters anew for a second time, Plaintiff might be further prejudiced by the inconsistent judgments that may result. The Court held in the related action that the undisputed facts established that Allen entered an agreement in 1996 "whereby Allen purported to grant Classico a license to produce and sell certain products using the images contained in a collection of photographs of Marilyn Monroe, titled *Marilyn by Moonlight*, which included the Photograph." *Livingston v. Art.com, Inc.*, No. 3:13-cv-03748-JSC, 2014 WL 3404722, at *1, 3.  Plaintiff also proffered evidence that Allen published a book in 1996 of the same name, but the book does not contain the Photograph. *Id.* at *3.  The Court noted a dispute of fact about whether the photographs in the collection Classico received from Allen were the same as those contained in Allen's book, but declined to resolve that dispute because "it is undisputed that Allen at some point licensed the Photograph to Classico and sales commenced." *Id.* at *3.  The Court also noted that Classico paid royalties to Allen for the Photograph since 1996. *Id.* at *1.  Indeed, the Complaint alleges a clear relationship between the appearing Defendants and Allen: when Plaintiff first discovered infringement and asked Art.com to cease its infringing activity, Art.com "asked [its] vendor[, Classico] to confirm they are authorized to sell the Monroe Pictures[, and] Classico [ ] responded that Jack Allen owned the image and they pay him a royalty." (Dkt. No. 1-1 ¶¶ 15-16.)  Thus, the Court's summary judgment order in the related case

8

1    is clearly inconsistent with the defense that Allen now asserts.  Accordingly, this factor weighs

2    heavily against setting aside default.

3                                      \* \* \*

4        In short, although Allen's default was not due to culpable conduct and he has presented a

5    meritorious defense, these two factors are outweighed by the substantial prejudice to Plaintiff that

6    would result from setting aside default.  Given that Plaintiff has already litigated the merits of the

7    underlying case against other appearing defendants, requiring Plaintiff to re-litigate the same

8    issues, and, in particular, whether Allen "licensed" the photograph to the appearing defendants,

9    would prejudice Plaintiff especially where, as here, further litigation could result in inconsistent

10    court orders. The Court therefore declines to set aside the Clerk's entry of default and instead

11    considers Plaintiff's motion for default judgment.  *See Franchise Holding II*, 375 F.3d at 926

12    (noting that the court may decline to set aside default if just one factor weighs against the

13    defendant).

14    **II.**      **Default Judgment**

15          A.     <u>Whether Default Judgment is Appropriate</u>

16        After entry of default, a court may grant default judgment on the merits of the case.  *See*

17    Fed. R. Civ. P. 55.  "The district court's decision whether to enter a default judgment is a

18    discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Default judgment

19    may be appropriate even when the defaulting defendant has sought to set aside the Clerk's entry of

20    default.  *See, e.g.*, *United States v. $32,000 in U.S. Currency*, No. C 05-5167 MHP, 2006 WL

21    1883274, at \*7 (N.D. Cal. July 7, 2006) (denying defendant's motion to set aside default and

22    entering default judgment against defendant); *Fed. Nat'l Mortg. Ass'n v. Boyd*, No. 2:14-cv-

23    03247-ODW (RZx), 2015 WL 143808, at \*5 (N.D. Cal. Jan. 12, 2015) (same); *Hartford Fire Ins.*

24    *Co. v. Mayer*, No. 07cv0711-BEN (POR), 2007 WL 3333191, at \*3 (S.D. Cal. Nov. 9, 2007)

25    (same).  Courts consider the following factors in determining whether to enter default judgment:

26

27

28

1

2

3

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

4   *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Upon entry of default, the factual

5   allegations of the complaint related to liability are deemed to have been admitted by the non-

6   defaulting party.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

7   Allegations regarding damages, however, are not deemed admitted; to that end, the Court has the

8   discretion to consider competent evidence and other papers submitted with a motion for default

9   judgment to determine damages.  *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp.

10  2d 995, 1000, 1010 (N.D. Cal. 2001) (citing *TeleVideo Sys., Inc.*, 826 F.2d at 917).

11      The better part of the *Eitel* factors support default judgment in this case.  First, if the

12  motion for default judgment were denied, Plaintiff would be left without a remedy given Allen's

13  failure to appear or otherwise defend this action until long after entry of default and only once the

14  instant motion for default judgment was fully briefed and judgment imminent, *see Pepsico, Inc. v.*

15  *Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002), or would be required to re-litigate

16  this matter after over a year of litigating the same claims against the defendants who timely

17  appeared and answered the complaint.  *See Aspen Ins. U.K. Ltd.*, 2010 WL 1849027, at *4;

18  *Stephenson*, 524 F.3d at 915.  Courts find prejudice to the plaintiff sufficient to serve as the basis

19  for entry of default judgment even where, as here, the defaulting defendant has belatedly appeared

20  and sought to set aside default.  *See, e.g., Boyd*, 2015 WL 143808, at *5.

21      Second, given Allen's recent motion to set aside default and proffered defense, there is a

22  possibility of a dispute concerning material facts.  Indeed, Allen recently contended that the

23  Photograph was not part of his collection at all by showing that it was not included in a 1996 book

24  that he published.  (*See* Dkt. No. 100-1 ¶ 3.)  Allen's eleventh-hour disavowal does not carry much

25  weight, however, because Plaintiff has alleged in the complaint that the Photograph was, in fact,

26  part of Allen's collection, and the Court must accept the well-pleaded facts of the Complaint as

27  true.  *See TeleVideo Systs.*, 826 F.2d at 917; *Bd. of Trs. of Auto. Indus. Welfare Fund v. Concord*

28  *Car, Inc.*, No. C 95-4039 TEH, 1996 WL 382845, at *2 (N.D. Cal. July 1, 1996).  But even

United States District Court
Northern District of California

10

1   considering the assertions in Allen's motion to set aside entry of default, while he has proffered

2   that the Photograph was not included in a particular publication of photographs—the 1996 book—

3   Allen has not offered any other evidence to counter Plaintiff's proof that the appearing Defendants

4   obtained the Photograph from him.  Thus, the possibility of a dispute concerning material facts is

5   small, and this factor weighs in favor of default judgment.

6         The next factor considers whether Allen's failure to appear and otherwise defend was the

7   result of excusable neglect.  As discussed above, Allen has offered reasons to explain his failure to

8   appear, including mistake and inability due to mental health and financial difficulties.  (*See* Dkt.

9   No. 100 at 4.)  This factor therefore weighs against default judgment.

10        Fourth, with respect to the sum of money that Plaintiff seeks, $150,000 in statutory

11   damages is a large request on a grant of default judgment even for willful infringement.  *See*

12   *Curtis v. Illumination Arts, Inc.*, No. C12-0991JLR, 2014 WL 3543581, at *9 (W.D. Wash. July

13   17, 2014) (noting that $450,000 was high for default judgment in a willful infringement action,

14   whereas $30,000 in statutory damages or no money damages at all was reasonable (citations

15   omitted)).  Thus, the amount of damages requested weighs against default judgment, but the Court

16   retains discretion to select the appropriate amount, so this factor does not weigh in either direction.

17   *See Pepsico*, 238 F. Supp. 2d at 1178 (noting that the court must consider the amount of damages

18   sought compared to the defendant's allegedly infringing conduct).  Finally, although the seventh

19   *Eitel* factor, which favors decision on the merits over default judgment, weighs against default

20   judgment, the Court finds that this factor is not dispositive.

21        Ultimately, balancing the *Eitel* factors is within the Court's discretion.  Here, although a

22   significant number of *Eitel* factors weighs against default, the possibility of prejudice in denying

23   default judgment weighs heavily in favor of granting default.  Having determined that, on balance,

24   the *Eitel* factors support Plaintiff's motion for default, the Court turns to the merits of Plaintiff's

25   substantive claims and the sufficiency of the evidence (the second and third *Eitel* factors).  At

26   bottom, these factors require Plaintiff to state a claim upon which it may recover.  *Danning v.*

27   *Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).  According to the complaint, Allen "knowingly and

28   systematically induced, caused, and materially contributed to the . . . unauthorized production,

United States District Court
Northern District of California

distribution, and preparation of derivatives of the copyrighted work and thus to the infringement of the Plaintiff's copyright and exclusive rights under copyright in the" Photograph. (Dkt. No. 1-1 ¶ 31.)[3] To prevail on a claim for copyright infringement, Plaintiff must prove (1) ownership of a valid copyright and (2) that Defendants copied protected elements of the copyrighted work. *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996). Plaintiff has sufficiently alleged both components of this claim: first, Plaintiff owns a registered copyright in the Photograph (Dkt. No. 1-1 ¶ 14); and second, Allen distributed that copyrighted work to Classico without his permission or consent (*id.* ¶¶ 16-17, 26). Taking Plaintiff's allegations as true, the undersigned finds that Plaintiff has adequately pleaded a claim for copyright infringement and is likely to succeed on this claim.

The same is true for Plaintiff's claim of contributory copyright infringement. A defendant is contributorily liable for copyright infringement if the defendant knowingly induces, causes, or materially contributes to the infringing conduct of another. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (citations omitted). Plaintiff alleges that Allen, through his company Dream City, purported to own the Photograph and to collect royalties from the appearing defendants who, in turn, distributed the Photograph to customers through their websites. (Dkt. No. 1-1 ¶ 16.) Based on these allegations, the Court concludes that Plaintiff has adequately pleaded a claim for contributory copyright infringement and is likely to succeed on this claim.

Based on the foregoing, the undersigned concludes that Plaintiff has adequately stated a claim for direct and contributory copyright infringement and recommends that the district court enter default judgment for Plaintiff on these claims.

B.   Remedies

In the complaint, Plaintiff requests that the Court award monetary damages, attorneys' fees and costs, and a permanent injunction enjoining further infringement. The Court will evaluate each of Plaintiff's requests in turn.

United States District Court
Northern District of California

---

[3] Although in the complaint Plaintiff alleges both copyright infringement and conversion, Plaintiff appears to seek default solely on the infringement claim. (*See* Dkt. No. 87 at 3, 7 (discussing only liability for copyright infringement).)

1.      *Monetary Damages*

Generally, in assessing the appropriate amount of damages on a default judgment, the court does not presume the truth of any factual allegations related to the amount of damages.  *Televideo Sys.*, 826 F.2d at 917-18.  Thus, the plaintiff is required to prove all damages sought in the complaint, and the court must ensure that the amount of damages is reasonable and demonstrated by the evidence.  Fed. R. Civ. P. 55(b); Fed. R. Civ. P. 8(b)(6); *TeleVideo Sys.*, 826 F.2d at 917-18.  Where the amount is not clear on the face of the complaint and other competent evidence that the plaintiff submits—*i.e.*, where there is no "sum certain"—the court may hold an evidentiary hearing to determine the amount of damages.  Fed. R. Civ. P. 55(b)(2).  Importantly, a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).  In an action for copyright infringement in particular, the copyright owner is entitled to recover the actual damages suffered as a result of the infringement, as well as the defendant's profits obtained as a result of the infringement.  17 U.S.C. § 504(a)(1).  In the alternative, and only at the election of the plaintiff, the court may award statutory damages of no less than $750 and up to $30,000 per copyright infringement.  *Id.* § 504(c)(1).  Where the copyright owner proves that the infringement was willful, the court has discretion to increase the award of statutory damages to a maximum amount of $150,000.  *Id.* § 504(c)(2).  In contrast, where the "court finds[ ] that [the] infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court [in] its discretion may reduce the award of statutory damages to a sum of not less than $200.  *Id.*

Here, Plaintiff requests an award of statutory damages in the amount of $150,000.  (Dkt. No. 87 at 7.)  This statutory maximum is predicated on Plaintiff's contention that Allen's infringement was willful.  (*Id.*)  Specifically, Plaintiff contends that enhanced damages are appropriate here because Plaintiff notified Allen of the infringement, and but he and other defendants continued to infringe—or at least, infringed in 2012—even after Allen "apologized and stated that he would withdraw the [P]hotograph" from the vendors' online collection.  (*Id.* at 5.)  As a threshold matter, the Court must determine whether statutory damages are available.  Only if this question is answered in the affirmative will the Court proceed to determine what the

1  appropriate amount of statutory damages should be.

2              a.      Availability of Statutory Damages

3       "Several courts have found statutory damages are [particularly] appropriate in default

4  judgment cases because the information needed to prove actual damages is within the infringers'

5  control and is not disclosed." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio

6  2007) (collecting cases); *see also Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003)

7  ("Statutory damages are particularly appropriate in a case . . . in which [a] defendant has failed to

8  mount any defense or to participate in discovery[.]").  However, under the Copyright Act,

9  copyright registration is a prerequisite to recovering certain remedies for infringement.

10  Specifically, 17 U.S.C. § 412(2) states that statutory damages and attorneys' fees are not available

11  for "any infringement of copyright commenced after first publication of the work and before the

12  effective date of its registration, unless such registration is made within three months after the first

13  publication of the work."  In the Ninth Circuit, "the first act of infringement in a series of ongoing

14  infringements of the same kind marks the commencement of one continuing infringement under

15  [Section] 412."  *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700 (9th Cir. 2008).

16  Where such a continuing infringement begins before registration, statutory damages are denied.

17  *See id.*  While some courts faced with pre- and post-registration infringement award actual

18  damages for the pre-registration infringement while reserving statutory damages for post-

19  registration infringement, *see, e.g.*, *Getty Images (US) v. Virtual Clinics*, No. C13-0626JLR, 2014

20  WL 358412, at * 7 (W.D. Wash. Jan. 31, 2014), the main approach appears to be denying

21  statutory damages altogether where a defendant's infringement begins prior to registration—at

22  least where, as here the pre- and post-registration infringement is part of one continuing pattern of

23  conduct.  *See Derek Anderson*, 528 F.3d at 700; *Livingston*, 2014 WL 3404722, at *4.  The

24  question in this case, then, is whether, based on the facts alleged in the complaint, Allen's first act

25  of infringement occurred *before* or *after* Plaintiff registered his copyright to the Photograph in

26  August of 2004.

27       The facts alleged in the complaint do not discuss when any of the defendants' infringement

28  began.  While the complaint focuses on when Plaintiff discovered the infringing activity (2008)

United States District Court
Northern District of California

14

and later learned of further infringement (2012), it does not contain any allegations regarding when Allen's infringement began.  Notably, because these facts affect the Court's calculation of damages, the Court need not accept Plaintiff's allegations or claims as true, and may consider other competent evidence relevant to damages.  *See TeleVideo Sys., Inc.*, 826 F.2d at 917.  Here, the Court considers evidence pertaining to damages adduced in the related case against the appearing defendants.  In that case, the Court concluded that Plaintiff was *not* entitled to statutory damages with respect to Art.com, Culturenik, and Classico's infringement because the evidence produced in favor of their motion for summary judgment indicated that *their* infringement began prior to August 2004.  Grouping Allen's conduct together with the appearing defendants, the Court highlighted evidence that the appearing defendants produced indicating that Allen entered an agreement in 1996 with Classico whereby Allen purported to grant Classico a license to produce and sell certain images of Marilyn Monroe, which included the Photograph.  *Livingston*, 2014 WL 3404722, at *3.  Further evidence indicated that Classico sold the Photograph to another website in April of 2004–again, several months before Plaintiff registered the copyright.  *Id.* at *3.  Based on this evidence, the Court concluded that the undisputed facts demonstrated that defendants' first acts of infringement—including Allen's—occurred prior to registration.  *Id.* at *4.  While leaving unanswered the issue of how exactly Classico obtained the Photograph from Allen in 1996, the Court held as undisputed the "fact that in April 2004" one of Allen's licensees distributed the Photograph to customers, and thus Allen's infringement began prior to Plaintiff's registration.  *Livingston*, 2014 WL 3404722, at *3.  Accordingly, statutory damages were not available to Plaintiff.  *Id.*

In light of that conclusion in the related case against the appearing defendants, the Court ordered Plaintiff to submit supplemental briefing on its position that these same statutory damages are available to Plaintiff for Allen's infringement.  (Dkt. No. 92.)  Plaintiff urges the Court to conclude that statutory damages are still available because "the facts that establish liability against [Allen] . . . are separate from the facts that establish liability against the [appearing] Defendants[.]"  (Dkt. No. 93 at 2.)  In other words, from Plaintiff's perspective, while the Court's earlier decision indicated that Art.com, Culturenik, and Classico began infringing in April of 2004,

1    "there is no evidence in the record that conclusively demonstrates [that] Jack Allen's infringement

2    predates registration." (*Id.*)  Plaintiff focuses on the evidence of royalty payments, contending that

3    there is no evidence of royalty payments to Jack Allen prior to 2009, so it cannot be "conclusively

4    establish[ed] that Jack Allen infringed prior to 2009." (Dkt. No. 93 at 3; Dkt. No. 87 at 4-5.)  But

5    royalty payments aside, the Court concluded that Allen's infringement began prior to registration

6    based on its 1996 licensing agreement with Classico.  *Livingston*, 2014 WL 3404722, at *3.  On

7    this point, Plaintiff contends that the Classico-Allen agreement "may *suggest* an agreement

8    between Classico and Allen but it does not establish whether the agreement included the

9    Photograph[.]" (*Id.* at 3 (emphasis added); Dkt. No. 87 at 4-5.)  But it strains credulity—and runs

10   counter to the evidence adduced in the related case—to believe that despite the 1996 Classico-

11   Allen agreement, Classico somehow obtained the Photograph at issue from a source other than

12   Allen.  Indeed, the Complaint itself alleges that the appearing defendants obtained the Photograph

13   from Allen. (*See* Dkt. No. 1 ¶¶ 15-16.)

14         In effect, Plaintiff asks the Court to consider the instant motion for default judgment in a

15   vacuum and to ignore its conclusions from the related proceeding (as well as certain of Plaintiff's

16   own allegations in the Complaint).  The Court declines to take such an approach because it would

17   result in inconsistent rulings between the defaulting and appearing defendants, the type of

18   inconsistency that the Ninth Circuit instructs courts to avoid upon the default of fewer than all the

19   defendants in a given matter.  *See In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001).

20   Because the first act of infringement by Allen (and in turn, Dream City) began prior to Plaintiff's

21   August 2004 registration of his copyright, and even though some infringement occurred after that

22   date, Section 412 prohibits the award of statutory damages to Plaintiff.  *See Livingston*, 2014 WL

23   3404722, at *4-6; *Derek Andrews*, 528 F.3d at 700.

                                b.     Actual Damages

25         Given the Court's conclusion that statutory damages are unavailable, the Court must

26   consider Plaintiff's request for actual damages.  Plaintiff seeks actual damages for infringement

27   ranging from the execution of the Classico-Allen licensing agreement (November of 1996) to the

28   date that Allen received his last royalty payment (December of 2013). (Dkt. No. 93 at 5; *see also*

16

United States District Court
Northern District of California

1  Dkt. No. 87 at 4 n.2.)  The Copyright Act provides that a copyright owner is entitled to recover his

2  actual damages and any additional profits that Allen realized.  17 U.S.C. § 504(b); *see also Sony*

3  *Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984).  The moving party has the

4  burden to "prove up" the amount of damages.  *United States v. Sundberg*, No. C-09-4085 EMC,

5  2011 WL 3667458, at *6 (N.D. Cal. Aug. 22, 2011) (citation omitted).  Where the amount of

6  damages "is liquid or capable of ascertainment from definite figures contained in documentary

7  evidence or detailed affidavits, the Court may enter default judgment without a hearing on

8  damages."  *Id.* (internal quotation marks and citation omitted); *see also Pope v. United States*, 323

9  U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon

10  default, by taking evidence when necessary or by computation from facts of record, to fix the

11  amount which the plaintiff is entitled to recover and to give judgment accordingly.").  Similarly, if

12  the plaintiff can meet its burden of proving an amount of damages "capable of mathematical

13  calculation" through evidence, testimony, or written affidavit, there is no need for an evidentiary

14  hearing on damages.  *See Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981); *Bd. of Trs. of the*

15  *Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005).

16  　　　　Here, Plaintiff seeks a total of $225,940.44 in actual damages based on an estimate of the

17  profits that Allen realized.  (Dkt. No. 93.)  *See also* 17 U.S.C. § 504(b) (noting that the "copyright

18  owner is entitled to recover the actual damages suffered by him or her as a result of the

19  infringement, and any profits of the infringer that are attributable to the infringement" and that, to

20  "establish[ ] the infringer's profits, the copyright owner is required to present proof only of the

21  infringer's gross revenue"); *Sony Corp. of Am.*, 464 U.S. at 434.  Because Allen did not answer

22  and there is little evidence on which to base his actual profits, Plaintiff arrived at this number in

23  part based on evidence submitted in the related case against the appearing defendants, but largely

24  through extrapolation.  (*See* Dkt. No. 93 at 5.)  In support of its request, Plaintiff submitted the

25  declaration of Pete Livingston ("Livingston Declaration").  (Dkt. No. 94.)  In the Livingston

26  Declaration, Plaintiff reproduces portions of a Royalty Report that reflects Culturenik's royalties

27  paid quarterly to Allen for sales of the Photograph between January 2009 and December 2013

28  (save three months in the interim).  (Dkt. No. 94 ¶ 4-6.)  The Royalty Report shows that Allen

United States District Court
Northern District of California

1   collected $66,453.07 in royalties from sales of the Photograph during that four-year period.  (*Id.*

2   ¶ 8.)  Based on the Royalty Report, Plaintiff seeks actual damages as far back as November of

3   1996—the date of the Classico-Allen licensing agreement that initiated defendants' infringement.

4   Using the Royalty Report, Plaintiff calculates the appearing defendants' average quarterly royalty

5   payments to Allen based on the Photograph as $3,322.65.[4]  (*Id.* ¶ 10.)  Applying that average sales

6   figure to all quarters of the entire infringement period (from the 1996 licensing agreement through

7   the end of 2013) results in an estimated sales total of $225,940.44.  (*Id.* ¶¶ 9, 11.)

8           While courts have sometimes measured actual damages as the amount of royalties that the

9   copyright owner would have received for the infringing uses of the copyrighted material, that

10  measure is more appropriate after trial, or at other phases of litigation where there is significant

11  evidence before the court of those profits.  *See, e.g.*, *Softel, Inc. v. Dragon Med. & Sci. Comm'cns*

12  *Ltd.*, 891 F. Supp. 935, 941 (S.D.N.Y. 1995) (measuring actual damages by the royalties the

13  copyright owner would have received after a jury trial on damages).  Here, there is no such

14  evidence, and Plaintiff's calculation is speculative regarding pre-2009 damages, which is generally

15  frowned upon.  *See J & J Sports Prods., Inc. v. Lopez*, No. C 12-5784 SBA, 2014 WL 1320274, at

16  *3 (N.D. Cal. Mar. 25, 2014) (collecting cases discussing the court's discretion to deny actual

17  damages or lower the amount when they are too speculative).  While other courts have noted that

18  some amount of extrapolation into the amount of damages is appropriate when the need to

19  extrapolate is largely—if not entirely—a result of the defendant's failure to engage actively in the

20  litigation, *see, e.g.*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1064 (N.D. Cal.

21  2010) (in awarding default judgment damages, accepting the plaintiff's calculation of liquidated

22  damages based on the plaintiff's estimate of the defendant's sales because defendant's default left

23  the plaintiff without discovery into the matter), the damages methodology is simply too

24  speculative to rely on here.  For example, in *Craiglist* the plaintiff based its copyright actual

25  damages calculations on representations from the defendant's website about how many

26

27  ───────────────────────

28  [4] As the Livingston Declaration makes clear, Plaintiff reached this number by dividing the total
    quarterly sales amount for the Royalty Report periods ($66,453.07) by the number of quarters
    reported (20).  (Dkt. No. 94 ¶ 10.)

advertisements it sold in a single day.  *See id.*  But here, unlike *Craigslist*, Plaintiff is not basing his calculations on any representations of sales or royalties from Allen or his company; rather, Plaintiff is merely speculating that Allen's sales rate remained constant over more than 15 years, based on the sales rate of the last four years  *Cf. Craigslist*, 694 F. Supp. 2d at 1064.  In light of Plaintiff's failure to offer any evidence, or even argument, as to why this assumption is reasonable, this calculation is too uncertain to base an award of damages on.  The unfairness of this speculation is compounded by the fact that the amount Plaintiff now seeks in actual damages is larger than the amount of statutory damages that he sought in the first instance.

Moreover, in the context of actual damage awards for copyright infringement, the court usually deducts the plaintiff's expenses from the total profit amount.  *See* 17 U.S.C. § 504(b).  Thus, in all likelihood the measure of Allen's profits would be substantially reduced to account for such expenses.  Plaintiff has not done so here.  In light of the speculative nature of Plaintiff's calculations—in particular, that Allen's profits may well have been much lower or non-existent for certain quarters—and in order to account for a reduction in profits due to Allen's expenses, the Court concludes that a more appropriate measure of damages is $120,000.  This amount is likely sufficient to encompass the compensatory and deterrent purposes of the Copyright Act, as it is only slightly below the amount Plaintiff originally sought.  Accordingly, the Court recommends that Plaintiff be awarded actual damages in the amount of $120,000.00.

## 2. Attorneys' Fees and Costs

Next, Plaintiff seeks to recover attorneys' fees and costs under 17 U.S.C. § 505.  Section 505 of the Copyright Act provides that a court "may" award reasonable attorneys' fees and costs to a prevailing party.  *Id.*  When deciding whether to award attorneys' fees and costs, courts consider, among other things:  (1) the degree of success obtained; (2) whether the lawsuit was frivolous; (3) motivation; (4) objective unreasonableness (both in the factual and legal arguments in the case); and (5) the need in particular circumstances to advance considerations of compensation and deterrence.  *Historical Research v. Cabral*, 80 F.3d 377, 379 n.1 (9th Cir. 1996) (citations omitted).  In addition, "willful infringement is an important factor favoring an award of fees, [but] it does not, itself, compel such an award."  *Id.* at 379 (citation omitted).  Nevertheless, a

fee award does not require "exceptional circumstances" or any similar finding.  *Id.* at 378.

Instead, district courts may "freely award fees, as long as they treat prevailing plaintiffs and

prevailing defendants alike and seek to promote the Copyright Act's objectives."  *Id.* at 378-79.

Plaintiffs that obtain default judgment are generally awarded attorneys' fees and costs in the

ordinary course.  *See, e.g.*, *Broad. Music, Inc. v. JMN Rest. Mgmt. Corp.*, No. 14-cv-01190-JD,

2014 WL 5106421, at *3 (N.D. Cal. Oct. 10, 2014); *Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F.

Supp. 2d 1083, 1094 (N.D. Cal. 2008); *Controversy Music v. Shiferaw*, No. C03-4254 MJJ, 2003

WL 22048519, at *3 (N.D. Cal. July 7, 2003).  Here, given that Plaintiff is entitled to default

judgment on his copyright infringement claim, the Court concludes that reasonable attorneys' fees

and costs are appropriate.  *See, e.g.*, *Broad. Music, Inc.*, 2014 WL 5106421, at *3; *Penpower

Tech., Ltd.*, 627 F. Supp. 2d at 1094; *Controversy Music*, 2003 WL 22048519, at *3.

Having determined that Plaintiff is eligible for reasonable attorneys' fees and costs, the

sole remaining issue before the Court is the amount that should be awarded.  Plaintiff requests

$24,882 in attorneys' fees and $1,596.63 in costs.  (Dkt. No. 104 at 2.)  The Court will address

each category in turn.

a.      Attorneys' Fees

"[A] court assessing attorneys['] fees begins with a touchstone or lodestar figure, based on

the careful compilation of the time spent and reasonable hourly compensation of each attorney

. . . involved in the presentation of the case."  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-32

(2001) (internal quotation marks omitted); *see also Morales v. City of San Rafael*, 96 F.3d 359,

363 (9th Cir. 1996) ("The 'lodestar' is calculated by multiplying the number of hours the

prevailing party reasonably expended on the litigation by a reasonable hourly rate.").

"In determining the reasonable hourly rate, the district court should be guided by the rate

prevailing in the community for similar work performed by attorneys of comparable skill,

experience, and reputation."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir.

1986), *amended on other grounds by* 808 F.2d 1373 (9th Cir. 1987).  The relevant community for

the purposes of determining the prevailing market rate is generally the "forum in which the district

court sits."  *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008).  In terms of the

United States District Court
Northern District of California

20

reasonable amount of time spent, the Court should only award fees based on "the number of hours reasonably expended on the litigation" and should exclude "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). "There is no precise rule or formula for making these determinations[,]" and "[t]he court necessarily has discretion in making this equitable judgment." *Id.* at 436-37.

"Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Thayer v. Wells Fargo Bank, N.A.*, 92 Cal. App. 4th 819, 833 (2001) (citation omitted).

### i.   Reasonable Hourly Rate

"The first step in the lodestar analysis requires the court to determine a reasonable hourly rate for the fee applicant's services. This determination involves examining the prevailing market rates in the community charged for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1167 (N.D. Cal. 2012) (internal quotation marks and citations omitted); *see also Camacho*, 823 F.3d at 979. The "relevant community" for the purposes of the instant application is the district in which the lawsuit proceeds. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). "The fee applicant has the burden of producing satisfactory evidence . . . that the requested rates are in line with those prevailing in the community[.]" *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). In addition to affidavits from the fee applicant himself, other evidence of the prevailing market rate may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases. *See Cotton*, 889 F. Supp. 2d at 1167 (citations omitted). However, the actual rate that the fee applicant charged is not evidence of the prevailing market rate. *Id.* (citing *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995)).

Here, Plaintiff asserts that the fee award should be based on a rate of $350 per hour for attorney Beniam Biftu. (Dkt. No. 87-3 ¶¶ 1, 21; Dkt. No. 104 at 1.) Mr. Biftu has been practicing law for two and one-half years. (Dkt. No. 87-3 ¶ 6.) After working in a large company's

21

1    Intellectual Property Department, in 2013 Mr. Biftu opened his own law practice focusing on

2    copyright litigation and trademark prosecution matters.  (*Id.* ¶¶ 8, 10.)  Mr. Biftu contends that his

3    requested rate is appropriate because, based on his research, hourly rates for attorneys with similar

4    experience in Philadelphia, New Jersey, and New York range from $200 to $600 per hour.  (*Id.*

5    ¶ 20.)  But those areas are not the relevant legal community for the purposes of determining the

6    reasonable hourly rate for a case litigated in this District, *see Barjon*, 132 F.3d at 500, and

7    therefore those rates do not establish the reasonableness of Mr. Biftu's request.

8         Mr. Biftu further contends that $350 hourly rate is appropriate in this matter based on the

9    *Laffey* Matrix, which provides an hourly rate of $255 for an attorney with 1-3 years of experience.

10   (*Id.* ¶¶ 18-19, 21; *see also* Dkt. No. 104 at 1.)  The *Laffey* Matrix is a compilation of attorney and

11   paralegal rates in the Washington, DC area based on various levels of litigation experience.  *See*

12   *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on*

13   *other grounds*, 746 F.2d 4 (D.C. Cir. 1984).  The *Laffey* Matrix "has been regularly prepared and

14   updated by the Civil Division of the United States Attorney's Office for the District of Columbia

15   and used in fee shifting cases, among others."  *Theme Promotions, Inc. v. News Am. Mktg. FSI,*

16   *Inc.*, 731 F. Supp. 2d 937, 947 (N.D. Cal. 2010) (internal citation omitted).  But "[t]he rates posted

17   in the Laffey matrix are tailored for the District of Columbia, which has a different cost of living

18   index from the San Francisco, California Bay Area," where this case was litigated.  *Id.*  Thus, the

19   *Laffey* Matrix itself is of limited significance in this District.  In fact, "[t]he Ninth Circuit has

20   questioned the relevance of the *Laffey* Matrix to determining a reasonable rate in the Bay Area."

21   *J & J Sports Prods., Inc. v. Ortiz*, No. 12-CV-05766-LHK, 2014 WL 1266267, at *3 n.1 (N.D.

22   Cal. Mar. 24, 2014) (citing *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir.

23   2010)).  On the other hand, other courts have adjusted the *Laffey* Matrix numbers to account for

24   the higher costs in the Bay Area, noting that—in 2008, at least—the *Laffey* Matrix hourly rate for

25   an attorney with 1 to 3 years of experience was $250 per hour.  *Craigslist*, 694 F. Supp. 2d at

26   1067-68.  Even if this adjusted amount were relevant, while courts in this District have on

27   occasion used the adjusted *Laffey* Matrix as an objective source for setting hourly rates, they have

28   declined to do so for counsel from small firms—like Mr. Biftu's apparent solo practice—which

United States District Court
Northern District of California

United States District Court
Northern District of California

1    are "generally awarded fees based on lower rates[.]"  *Lazaro v. Lomarey, Inc.*, No. C-09-02013,

2    2012 WL 2428272, at *2 (N.D. Cal. June 26, 2012) (citation omitted).  Thus, the *Laffey* Matrix

3    provides a starting point for determining what hourly rate might be reasonable to compensate Mr.

4    Biftu for his work done on this matter, but its support is somewhat speculative:  if the DC attorney

5    rate is $250, that number should be adjusted upward in light of the Bay Area locale, but adjusted

6    back down to account for Mr. Biftu operating a solo practice rather than associating with a large

7    firm.

8         Plaintiff has not submitted an affidavit from any attorney that worked on this case or from

9    any other attorney attesting to the prevailing rates in the Northern District of California for

10   representation of trademark infringement by lawyers of reasonably comparable skill, experience,

11   and reputation.  *See Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992).

12   Nor has Plaintiff submitted any evidence of hourly rate determinations in other trademark

13   infringement cases in this District setting the rate for attorneys' fees.  *See J & J Sports Prods.,*

14   *Inc.*, 2014 WL 1266267, at *3.  The Court has conducted its own review, and found that other

15   courts in this District have determined that rates ranging from $225 to $600 are reasonable.  *See,*

16   *e.g.*, *Automattic Inc. v. Steiner*, No. 13-5413 PJH, 2015 WL 1022655, at * --- F. Supp. 3d ----

17   (N.D. Cal. Mar. 2, 2015) (considering appropriate attorneys' fees on default judgment, in light of

18   data from the American Intellectual Property Law Association reflecting that the average billing

19   rate for IP attorneys in San Francisco is $547 per hour, awarding rates of $418.50 per hour for

20   three attorneys of ranging experience who worked on the case); *Goldberg v. Cameron*, No. C-05-

21   03534-RMW, 2011 WL 3515899, at *7-8 (N.D. Cal. Aug. 11, 2011) (awarding attorneys' fees

22   ranging from $225 to $550 in copyright infringement entertainment case, but noting that some

23   rates in this District range from $600 to $900 per hour); *Autodesk, Inc. v. Flores*, No. 10-CV-

24   01917-LHK, 2011 WL 1884694, at *2 (N.D. Cal. May 18, 2011) (considering appropriate

25   attorneys' fees on default judgment, noting that the average rate for IP associates is $366 per hour,

26   and awarding $350 to attorney with 7 years of experience); *Craigslist, Inc.*, 694 F. Supp. 2d at

27   1066 (in a case involving claims of copyright infringement, among others, awarding fees at a rate

28   of $300 per hour for a second-year associate at a major law firm).  Viewing the American

United States District Court
Northern District of California

1    Intellectual Property Law Association report that the plaintiff recently submitted in *Automattic*

2    *Inc. v. Steiner*, the average hourly billing rate in the city of San Francisco is $547 per hour, while

3    the average more generally in the "West" (the region is not defined in the document) is $327 per

4    hour.  (*See Automattic Inc. v. Steiner*, No. 13-cv-5413, Dkt. No. 26-1.)  Of course, while the Court

5    sits in San Francisco, the District encompasses a much broader area, so both numbers are relevant

6    to the analysis.

7           Based on the fees regularly awarded in comparable actions in this District, Mr. Biftu's 2 ½

8    years of practice experience, and that Mr. Biftu practices exclusively in the field of copyright and

9    trademark matters, the Court concludes that Mr. Biftu should be awarded fees at a rate of $325 per

10   hour.

11                              ii.      Reasonableness of Time Spent

12          Over the nearly two-year span of this litigation, Mr. Biftu has billed 67.33 hours.  (*See* Dkt.

13   No. 104 at 4.)  Mr. Biftu began by reviewing documents and communications between Plaintiff

14   and Defendants that Plaintiff provided.  (*Id.* at 2.)  Mr. Biftu spent a total of 23 hours researching

15   and drafting the complaint, 2 hours strategizing with local co-counsel,[5] and 3.76 hours meeting

16   with Plaintiff.  (*Id.* at 2-3.)  The lion's share of Mr. Biftu's billed time in this case—specifically,

17   35.33 hours—was spent researching and drafting motions and declarations.  (*Id.* at 3-4.)

18   Specifically, Mr. Biftu drafted a motion to appear pro hac vice, a request that the Clerk enter

19   default, the instant motion for default—which involved multiple rounds of supplemental

20   briefing—and an opposition to Plaintiff's motion to set aside default.  (*Id.* at 3-4.)  Having

21   reviewed the billing entries reflecting the time associated with each task, the Court is satisfied that

22   the number of hours Mr. Biftu billed in this case is reasonable.

23          This is particularly true given that Plaintiff has not requested reimbursement of attorneys'

24   fees for any of the significant work done on claims against the appearing defendants—claims that

25   undoubtedly were related to the claims against Allen and potentially recoverable.  *See Hensley v.*

26

27   _____

     [5] Mr. Biftu's declaration does not specifically define the abbreviations used.  However, the Court

28   construes reference to "PL" as Plaintiff Pete Livingston and to "TT" as local co-counsel Tesfaye
     Tsadik.

                                                      24

*Eckerhart*, 461 U.S. 424, 423-35 (1983); *see also Schwarz*, 73 F.3d at 903 (noting that the court may award attorneys' fees for claims against other co-defendants unless the "relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised" (citation omitted)); *Stonebrae L.P. v. Toll Bros. Inc.*, 521 F. App'x 592, 594 (9th Cir. 2013) (affirming district court's award of attorneys' fees related to claims against dismissed co-defendants because the claims were related, the plaintiff actually prevailed, and the claims "arose from the same course of conduct").  Likewise, Plaintiff could have sought an award of attorneys' fees to compensate for the work done by co-counsel Tesfaye Tsadik, but did not do so.

Accordingly, applying a rate of $325 per hour to the 67.33 hours Mr. Biftu reasonably spent on this case, the Court awards $21,882.25 in attorneys' fees to Plaintiff.

### b.    Costs

In addition, Plaintiff seeks $1,596.63 in costs as reflected in Mr. Biftu's declaration.  (Dkt. No. 104 at 4.)  The costs reflected in the Biftu declaration are, according to Mr. Biftu, "an accurate record of costs and expenses . . . based on sales receipts, check records, and other documents." (Dkt. No. 87-3 ¶ 24.)  Most of the costs requested involve filing, mailing, and service fees, which are the types of expenses generally awarded as reasonable.  (*See* Dkt. No. 104 at 4.)  Costs for WestLaw legal research are also reasonable.  Specific to this case, Plaintiff also seeks reimbursement of the cost of purchasing both the 1996 and 2000 edition of *Marilyn by Moonlight*—Allen's book of Marilyn Monroe photographs; given the topic of this litigation, these costs are reasonable, as well.

Two entries in Mr. Biftu's itemized list of costs do not present as clear a picture.  First, Plaintiff paid $155.00 for "paralegal preparation of summons."  Compensation for work done by paralegals is generally considered to be part of the attorneys' fee award.  *See, e.g.*, *Pension Plan v. Yubacon Inc.*, No. C-12-04738 DMR, 2014 WL 5280759, at *5 (N.D. Cal. Oct. 14, 2014).  In that vein, courts in this District recently have awarded fees for paralegals at a rate of $120 through $150 per hour.  *See id.* (collecting cases).  Counting a paralegal payment instead as an expense (assuming that Mr. Biftu does not employ a paralegal and had to outsource the work) even if

United States District Court
Northern District of California

United States District Court
Northern District of California

1   reimbursement were at the higher end of this District's spectrum, it is unclear why a paralegal

2   would need to spend over an hour preparing the summons in this case, which involved only

3   entering address information for Defendants into a pre-prepared form.  (*See* Dkt. No. 2.)

4   Accordingly, the Court reduces the cost for the paralegal's preparation of the summons to $120.

5          In addition, Mr. Biftu's declaration includes a cost entry for $667.53 in "Plaintiff's

6   expenses for investigatory research & documenting infringement."  (Dkt. No. 104 at 4.)  "Courts

7   are divided on whether to award investigative costs incurred in connection with copyright

8   infringement[.]"  *Millenium TGA, Inc. v. Leon*, No. 12-CV-01360 (MKB), 2013 WL 5719079, at

9   *15 (E.D.N.Y. Oct. 18, 2013) (citation omitted).  The Copyright Act provides no definition or list

10  of expenses that may be reimbursed as "full costs" of suit.  *See id.*  As a result, some courts "have

11  awarded investigative expenses as costs" while "[o]thers have declined" to do so.  *Id.* (citations

12  omitted).  Even if such costs are recoverable under the statute, courts tend to decline to award

13  investigative costs where the requesting party failed to enumerate exactly what tasks the

14  investigator performed or "to explain why the services of an investigator were necessary [in the]

15  action[.]"  *Nature's Enters., Inc. v. Pearson*, No. 08 CV 8549, 2010 WL 447377, at *10 n.14

16  (S.D.N.Y. Feb. 9, 2010); *see also, e.g.*, *Joe Hand Promotions, Inc. v. Albright*, No. CIV. 2:11-

17  2260 WBS CMK, 2013 WL 4094403, at *6 (E.D. Cal. Aug. 13, 2013) ("Even if plaintiff's

18  investigative costs may be recoverable . . . , the court finds such costs are unallowable here

19  because they are insufficiently documented." (citations omitted)); *Joe Hand Promotions, Inc. v.*

20  *White*, C 11-01331 CW JSC, 2011 WL 6749061, at *3 (N.D. Cal. Dec. 6, 2011), *report &*

21  *recommendation adopted*, C 11-1331, 2011 WL 674065 (N.D. Cal. Dec. 23, 2011) (declining to

22  award investigative costs due to inadequate documentation); *J & J Sports Prods., Inc. v. Magat*,

23  C-11-01149 WHA, 2011 WL 4831206, at *4 (N.D. Cal. Oct. 12, 2011) (declining to award $600

24  in investigative fees due to inadequate explanation of the expense); *Millenium TGA, Inc.*, 2013

25  WL 5719079, at *15 (awarding only those costs that the plaintiff demonstrate were necessary to

26  the litigation by "provid[ing] a detailed description of the tasks performed by the investigator and

27  the reason that these tasks were critical").  Here, the Biftu declaration provides no explanation

28  whatsoever regarding what the investigation or research entailed, how long it took, who performed

it, or why it was necessary.  Given the vague entry in the Biftu declaration, the Court declines to award the $667.53 in investigative costs sought in this matter and will strike it from the total costs awarded.

Thus, the Court will award $894.10 in costs, representing the total costs Plaintiff seeks less the deductions explained above.

### 3.  Injunctive Relief

Finally, Plaintiff urges the Court to enter a permanent injunction against Allen enjoining him from continued infringement of Plaintiff's right to the Photograph, restoring ownership of the Photograph to Plaintiff, and requiring Allen to cease reproduction, distribution, or the production of unauthorized derivatives of the images without Plaintiff's authorization.  (Dkt. No. 1-1 at 7 ¶¶ 1-2; Dkt. No. 87 at 7.)  Plaintiff contends that such an injunction is necessary given that "Defendants in this case have begun new infringements . . . after being informed to cease and desist."  (Dkt. No 87 at 7.)  Although the complaint does not connect Culturenik's later continuing infringements to Allen or Dream City, an injunction is nonetheless warranted to make Allen's obligations clear going forward.

The Copyright Act authorizes the court to grant injunctive relief "as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  But "an injunction [does not] automatically follow[ ] a determination that a copyright has been infringed."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006).  Rather, "[a]n injunction should issue only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (internal quotation marks and citation omitted).  If granted, an injunction must be narrowly tailored to remedy only the harms that the plaintiff specifically identifies, rather than to enjoin all possible breaches of the law.  *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004); *see also Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998-1002 (N.D. Cal. 2006).  In determining whether to impose an injunction, the court must consider (1) whether the plaintiff has suffered irreparable injury; (2) whether the plaintiff can be adequately compensated by a remedy at law, such as monetary damages; (3) whether the balance of hardships between the plaintiff and

United States District Court
Northern District of California

1   defendant favors the plaintiff; and (4) whether the permanent injunction will serve the public.

2   *Getty Images (US), Inc.*, 2014 WL 358412, at *8.

3       Here, in light of the Allen's past infringement—especially that which occurred even after

4   Allen recognized and pledged to cease any infringing conduct—his failure to appear in this action

5   until long after default was entered and the instant motion for default judgment had been fully

6   briefed, and that Plaintiff's proposed bar is narrowly tailored to prevent Allen from engaging in

7   conduct that infringes on the Photograph, the Court concludes that injunctive relief is appropriate.

8   The undersigned therefore recommends that the court issue a permanent injunction consistent with

9   the language set forth in Plaintiff's complaint.  (*See* Dkt. No. 1-1 at 7 ¶¶ 1-2.)

## CONCLUSION

11      For the reasons explained above, the Court recommends that Allen's motion to set aside

12  the Clerk's entry of default be DENIED and that Plaintiff's Motion for Default Judgment (Dkt.

13  No. 87) be GRANTED.  The Court further recommends that judgment be entered in favor of

14  Plaintiff, and that Plaintiff be awarded actual damages in the amount of $120,000.00, attorneys'

15  fees in the amount of $21,882.25, and $894.10 in costs.  Further, the Court recommends that a

16  permanent injunction be issued barring Allen and Dream City from engaging in any further

17  infringing conduct related to Plaintiff's Photograph, as set forth in Plaintiff's complaint.

18      Plaintiff shall mail a copy of this Report and Recommendation to Allen at the address

19  listed on the docket within three business days from the filing date of this Order and shall file a

20  proof of mailing with the Court.  The Court notes that Allen is also registered to receive notice via

21  ECF.  Any party may file objections to this report and recommendation with the district court

22  judge within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ.

23  P. 72(b); Civ. L.R. 72-3.  Failure to file objections within the specified time may waive the right to

24  appeal the District Court's ultimate Order.

25      **IT IS SO ORDERED**.

26  Dated:  April 17, 2015

27  _____

28  JACQUELINE SCOTT CORLEY
    United States Magistrate Judge

United States District Court
Northern District of California

28